FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 12, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM P.,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | NO:  2:19-CV-71-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 11, 15.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree.  The Defendant is represented by Special Assistant United States Attorney Diana Andsager.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 15, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 11.

## JURISDICTION

Plaintiff William P.[1] protectively filed for supplemental security income on February 17, 2012, alleging an onset date of May 8, 2008. Tr. 282-87. Benefits were denied initially, Tr. 167-75, and upon reconsideration, Tr. 177-86. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on December 3, 2013. Tr. 58-81. Plaintiff had representation and testified at the hearing. *Id*. The ALJ denied benefits on May 13, 2014. Tr. 143-60. Plaintiff sought review of this decision, and on March 7, 2016, the Appeals Council vacated the decision and remanded the case for further proceedings. Tr. 161-64. Plaintiff testified at an additional hearing on January 4, 2017. Tr. 82-112. The ALJ denied benefits, Tr. 12-36, and the Appeals Council denied review. Tr. 1. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff was 43 years old at the time of the first hearing. Tr. 66. He stopped going to school after the eighth grade, and testified that he was in special education classes due to problems in reading and writing. Tr. 66-67. Plaintiff lives with his mother. Tr. 72. He has work history as a cabinet assembler, forklift operator, daycare worker, and jack hammer operator. Tr. 99-100. Plaintiff testified that he cannot work because his wrist will start hurting and he will be unable to grip things. Tr. 48, 90.

Plaintiff crashed his dirt bike in May 2008 and injured his right wrist. Tr. 68. He had surgery two weeks later. Tr. 68. He reported that he cannot turn his wrist over and has trouble gripping things with his right hand. Tr. 69, 74-75, 89. He testified that he can use a screwdriver or a hammer for five minutes or so before his wrist starts hurting. Tr. 92. Plaintiff also reported that his knees and hip are hurting and at times his legs will shake uncontrollably. Tr. 77-78. He testified that he has back pain, and he is being evaluated for sleep apnea. Tr. 96.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii).

If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R.

§ 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 17, 2012, the application date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments: learning disorder, depressive disorder, and history of right-hand fracture in May 2008.  Tr. 19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except he is limited to unskilled work; that is, work that can be learned in 30 days or less.  The work should require no more than simple, work related decisions and should require few workplace changes.  He is limited to reading and writing at the 2nd and 3rd grade level.  He can perform math calculations at the 7th grade level.  He is limited to frequent handling, grasping, and fingering with the right upper extremity.

Tr. 21.  At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work.  Tr. 27.  At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, including: basket filler,

assembler, parking lot attendant, and cleaner.  Tr. 28-29.  On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, since February 17, 2012, the date the application was filed.  Tr. 29.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act.  ECF No. 11.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ erred at step five.

### DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's

testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 22.

### 1. Lack of Objective Medical Evidence

First, the ALJ noted that while the medical evidence "indicates restrictions (as reflected in the residual functional capacity), it does not show the level of impairment alleged by [Plaintiff]." Tr. 22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling limitations. As to his claimed physical impairments,[2] the ALJ noted that

---

[2] The ALJ's decision also found that despite evidence of restrictions based on Plaintiff's cognitive limitations, he could still perform unskilled work, and the "overall record does not suggest more restrictions than those in the [assessed RFC]." Tr. 23. However, the Court declines to address Plaintiff's claimed mental limitations because they were not identified or challenged with specificity in Plaintiff's opening brief. *Carmickle*, 533 F.3d at 1161 n.2..

after Plaintiff's right wrist surgery in May 2008, the record includes notes of "progressively improving pain, range of motion, and grip," and February 2010 x-rays showed good positioning with good fixation and no evidence of loosening. Tr. 22-23 (citing Tr. 415-48, 452-53, 506); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ further noted that Plaintiff complained about wrist problems during disability evaluations, but treatment notes "made little to no mention of [wrist] symptoms in treatment notes. Indeed, [Plaintiff] denied all musculoskeletal problems in the most recent notes of record." Tr. 23 (citing Tr. 510, 689-93, 736-48, 752, 759, 767-77); *see Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). Finally, the ALJ found that objective examination findings of Plaintiff's wrist "revealed normal or only minimally abnormal findings," including: normal strength, normal sensation, and no erythema or warmth of joint. Tr. 23, 510, 655, 675, 682, 698, 711, 717, 728, 730, 738, 752. Thus, the ALJ concluded that the medical evidence "is inconsistent with [Plaintiff's] testimony that his wrist range of motion is severely limited; his wrist is 'frozen'; and he has problems with gripping and manipulation due to pain." Tr. 23.

Plaintiff argues that "[w]hile the ALJ infers [that Plaintiff's lack of reported symptoms] is because [his] wrist impairment was less severe than he was reporting

to Social Security, his treatment records reflect that his condition simply reached a plateau and he ran out of options to help his condition." ECF No. 11 at 12.  In support of this argument, Plaintiff cites findings by treatment providers that his right wrist was "unlikely to improve" and "has certainly maxed out as far as range of motion is concerned." ECF No. 11 at 12-13 (citing Tr. 453, 561).  Plaintiff further references Social Security Regulations that direct an ALJ to "consider possible reasons [he] may not comply with treatment or seek treatment consistent with the degree of [his] complaints," which might include advice from a medical source that "there is no further effective treatment to prescribe or recommend that would benefit the individual."  Social Security Regulation ("SSR") 16-3p, 2016 WL 1119029 at *9 (Mar. 16, 2016).  However, in this case, the ALJ does not reject Plaintiff's physical symptom claims because he failed to seek treatment; rather, the ALJ notes that when Plaintiff sought treatment he "often made no mention of such symptoms." Tr. 23. Moreover, regardless of the consistency of Plaintiff's complaints, it was reasonable for the ALJ to find the severity of Plaintiff's physical symptom claims was inconsistent with objective medical evidence.  "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

### 2. Daily Activities

Second, the ALJ found Plaintiff's "activities of daily living are inconsistent with his allegations regarding right hand limitations." Tr. 24. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ found Plaintiff's "ability to drive on a regular basis is not entirely consistent with his allegations of upper extremity limitations," because driving "reasonably requires use of the upper extremities to grip and turn the steering wheel and to operate the turn signals, wipers, heating and cooling." Tr. 24, 67, 341. The ALJ additionally cited evidence that Plaintiff provided caregiving for his mother, including running errands, cooking, household cleaning and other chores; cared for three horses and a dog; went to town to shop and attend appointments; mowed the yard; and attended to his personal care. Tr. 24 (citing Tr. 339-41, 381, 477, 489).

Plaintiff briefly argues that "the ALJ fails to consider the differences between self-paced chores and the requirements of a competitive work environment. For instance, [Plaintiff] testified that feeding the horses took him 20 to 30 minutes after

injuring his hand; prior to his accident, it took him only a couple of minutes."  ECF

No. 11 at 13 (citing Tr. 70).  However, regardless of evidence that could be viewed

more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's

documented daily activities, including caring for his mother and horses on a daily

basis, was inconsistent with his allegations of incapacitating limitations.  Tr. 28;

*Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting

Plaintiff's testimony to the extent that they contradict claims of a totally debilitating

impairment); *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more

than one interpretation, the ALJ's conclusion must be upheld).  This was a clear and

convincing reason to discredit Plaintiff's symptom claims

### 3.  Additional Reasons

Finally, the ALJ noted that (1) Plaintiff "was able to work with his cognitive

restrictions, which suggests that they do not cause more restrictions than those

accommodated" in the assessed RFC, and (2) Plaintiff's "unemployed status during

most, if not all, of the relevant period was largely due to factors other than his

alleged physical and mental impairments."  Tr. 24-25.  Generally, the ability to work

can be considered in assessing credibility.  *Bray v. Comm'r Social Security Admin.*,

554 F.3d 1219, 1227 (9th Cir. 2009).  Moreover, it was reasonable for the ALJ to

consider Plaintiff's report in July 2016 that he was not working because he was

caring for his mother.  Tr. 25, 381; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.

2001) (an ALJ may consider that a claimant stopped working for reasons unrelated

to the allegedly disabling condition when weighing the Plaintiff's symptom reports). However, the Court declines to consider these reasons because Plaintiff does not identify or challenge them in his opening brief. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinions of treating physician, Jeremiah Crank, M.D. and treating physician Vanugopal Bellum, M.D. ECF No. 11 at 7-11. The ALJ jointly considered these opinions; thus, the Court will do the same. In June 2014, and again in January 2016, Dr. Jeremiah Crank opined that due to lower back pain with radiculopathy, and right wrist pain "after surgery for fracture," Plaintiff was limited to sedentary work and had marked limitations in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. Tr. 651-60. In March 2012, Dr. Vanugopal Bellum opined that Plaintiff could stand for six hours in an eight hour day; sit for prolonged periods with occasional pushing and pulling of arm or leg controls; sit for most of the day, walking or standing for brief periods; lift a maximum of ten pounds; and frequently lift or carry two

pounds.[3]  Tr. 628-29.  The ALJ collectively gave "less weight" to Dr. Crank[4] and Dr. Bellum's opinions for several reasons.  Tr. 25-26.

---

[3] The record also includes a February 2015 opinion from Dr. Crank, a May 2010 opinion from Dr. Bellum, and an August 2010 opinion from Dr. Bellum.  Tr. 596-602, 707-11.  However, the Court declines to address these opinions as they are not identified or challenged with specificity in Plaintiff's opening brief.  *Carmickle*, 533 F.3d at 1161 n.2.

[4] Plaintiff argues that Dr. Crank's opinions are uncontradicted in the record because they were assessed after "Plaintiff's lumbar radiculopathy was documented in the record. . . . Therefore, [Dr.] Crank's opinion is uncontradicted in the record and convincing reasons are needed to reject his opinion."  ECF No. 11 at 7.  As noted above, if a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss,* 427 F.3d at 1216.  However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31   The Court finds it unnecessary to address this distinction, because as discussed herein, the ALJ properly weighed the opinion evidence under either standard.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

First, the ALJ found that "[a]lthough treating provider opinions are usually afforded more weight, [the ALJ gave] little weight to the opinions because neither doctor provided complete evaluations with objective findings consistent with such limitations. Nor do their treatment notes contain findings consistent with such severe restriction." Tr. 25. Similarly, the ALJ found that Dr. Bellum did not provide objective evidence consistent with his March 2012 opinion, particularly as to how Plaintiff's limitations worsened from being able to perform a full range of light work in February 2011, to being limited to less than sedentary work in March 2012. Tr. 26, 494-95, 628-29.

The ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes. *Tommasetti*, 533 F.3d at 1041; see also *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). In support of this finding, the ALJ found "most of [the treating physicians'] findings were unremarkable, and included normal wrist/hand range of motion." Tr. 25-26 (citing Tr. 506, 510, 597, 655, 660, 711).

First, Plaintiff argues the ALJ "ignored" Dr. Crank's January 2016 evaluation of Plaintiff, "where he diagnosed him with 'lumbar radiculopathy' and noted that degenerative changes were seen on x-ray"; noted that Plaintiff's lumbar and paralumbar were tender to palpation; and noted that Plaintiff had positive straight leg test. ECF No. 11 at 7-8 (citing Tr. 669, 675). However, the Court's review of the

ALJ's decision indicates that he did acknowledge Plaintiff's reports of tenderness to palpation, and he considered the only objective imaging study of record, a July 2013 x-ray indicating "mild degenerative changes at L1-2 and 2-3 disc levels." Tr. 19 (citing Tr. 675, 681, 688, 692, 732, 752). Second, Plaintiff generally argued that the ALJ "fail[ed] to note that Dr. Bellum's [March 2012] opinion was based on an ongoing treatment relationship with [Plaintiff] and the review of medical records from other professionals." ECF No. 11 at 10-11. However, as noted above, the ALJ cited evidence of unremarkable findings in Dr. Bellum's treatment notes at the time of his March 2012 opinion, including good range of motion at the elbow and wrist. Tr. 25, 510. Moreover, the Court is unable to discern, nor does Plaintiff specifically reference, evidence to support Plaintiff's contention that Dr. Bellum reviewed medical records from "other professionals." *See* ECF No. 11 at 10.

Based on the foregoing, and regardless of evidence that might be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the overall objective examinations and clinical findings in Dr. Crank and Dr. Bellum's own treatment notes were inconsistent with the severity of the limitations they assessed. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Second, the ALJ found Dr. Crank and Dr. Bellum's opinions were "inconsistent with the longitudinal medical evidence . . . , which, in addition to reflecting little to no right upper extremity restriction, does not show that

[Plaintiff's] alleged back pain constitutes a severe impairment." Tr. 26. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631. As an initial matter, Plaintiff argues that his "diagnosis of lumbar radiculopathy and abnormal findings on exam were not considered by the ALJ and are inconsistent with the finding that [Plaintiff] did not have a 'severe' back impairment." ECF No. 11 at 9. Plaintiff further contends that the ALJ's "errors are not harmless as the ALJ inappropriately used the lack of a step two finding to reject Dr. Crank's opinion." ECF No. 11 at 9. However, aside from this mention of the step two findings as part of Plaintiff's argument regarding the ALJ's consideration of the medical opinion evidence, Plaintiff fails to raise the step two issue in his opening brief. *See Kim*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Regardless, to the extent that he does properly raise a step two challenge, the Court notes that the ALJ did consider the objective and clinical findings regarding Plaintiff's allegations of back pain at step two, and found that "regardless of whether [he found] back pain a severe impairment, the overall record does not reflect more functional restrictions than those accommodated in the [RFC]." Tr. 19. Thus, any error in considering Plaintiff's back impairment at step two would be harmless because the ALJ ultimately resolved step two in Plaintiff's favor, proceeded with the five-step analysis, and crafted an RFC based on

all of Plaintiff's supported limitations.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch*, 400 F.3d at 682.

Plaintiff additionally argues that (1) the longitudinal record included diagnosis of "lumbar radiculopathy" by multiple treatment providers; and (2) the ALJ's finding that "[a]part from reports of tenderness to palpation, most records show little to no abnormality in any area, including gait and lower extremity strength and sensation" was an "inaccurate assessment of Plaintiff's medical history."  ECF No. 11 at 8-9; Tr. 19.  In support of this argument, Plaintiff cites diagnoses of "lumbar radiculopathy," and a single treatment note by Dr. Jeffrey Ventre in July 2013 that noted Plaintiff's "left leg shook uncontrollably," and upon examination found painful palpation to the left SI joint, mildly positive straight leg raise on the left, "pinwheel sensation patchy at left leg," and positive Yeoman's test, left greater than right.  Tr. 729-30.  First, the Court's review of the record indicates that "uncontrollable shaking" of the left leg was solely based on Plaintiff's own report, and Dr. Ventre also noted no recent imaging was available, musculature and extremities were normal, gait was normal, muscle tone was normal, leg strength was normal, and facet loading test was negative.  Tr. 730.  Moreover, the ALJ specifically cited examinations throughout the longitudinal record that found "little to no abnormality in any area, including gait and lower extremity strength and sensation. There were no findings of atrophy and [Plaintiff] typically exhibited only [] minimal range of motion deficits."  Tr. 19 (citing Tr. 643-44, 654, 659, 675, 681,

688, 698, 752, 768).  Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that Dr. Crank and Dr. Bellum's opinions are inconsistent with the longitudinal medical evidence.

Third, the ALJ found "the opinions of Dr. Bellum and Dr. Crank seem inconsistent with [Plaintiff's] daily activities."  Tr. 26.  An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999).  In support of this finding, the ALJ noted that Plaintiff cared for his mother, drove a vehicle, and took care of three horses. Tr. 26.  Plaintiff argues that "[w]ith no further explanation, it is not clear how [Plaintiff's] activities are inconsistent with Dr. Crank's restriction to a sedentary job."  ECF No. 11 at 9-10 (citing *Garrison*, 759 F.3d at 1012 ("[t]he ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")).  The Court finds it was reasonable for the ALJ to find Dr. Crank and Dr. Bellum's assessment that Plaintiff was limited to sedentary or less than sedentary work, and that he had "notable manipulative restrictions" based on alleged wrist and back impairments, was inconsistent with his ability to care for people and animals on a daily basis, and drive a car. See *Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989).  Moreover, even assuming the ALJ erred in failing to make

specific enough findings on this issue, any error is harmless because, as discussed above, the ALJ's ultimate rejection of these treating opinions was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

For all of these reasons, the Court finds the ALJ did not err in considering Dr. Crank and Dr. Bellum's opinions.

## C. Step Five

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he or she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. If the claimant can perform jobs which exist in significant numbers either in the region where the claimant lives or in the national economy, the claimant is not disabled. 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(b). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett*, 180 F.3d at 1099.

Here, in response to vocational interrogatories, the vocational expert considered two hypotheticals proposed by the ALJ. First, the ALJ proposed "hypothetical A" as follows:

> Assume a hypothetical individual who was born on March 20, 1970, has a limited education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described [in the vocational interrogatory responses]. Assume further that this individual has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the individual is limited to unskilled work; that is, work that can be learned in 30 days or less. The work should require no more than simple, work related decisions. The work should require few workplace changes. The individual is limited to reading and writing at the 2nd to 3rd grade level. The individual can perform math calculations at the 7th grade level.

Tr. 403. In response to this hypothetical, the vocational expert indicated that an individual as described in hypothetical A could perform Plaintiff's past job of childcare provider. Tr. 403. The vocational expert further opined that an individual described in hypothetical A "could not perform any unskilled occupations with jobs that exist in the national economy." Tr. 404.

As noted by Plaintiff, "the ALJ also proposed hypothetical B, which was identical to hypothetical A except that additional manipulative limitations were added," specifically, "[t]he individual would be limited to frequent handling, grasping, and fingering with the right upper extremity." ECF No. 11 at 16 (citing Tr. 404). In response to hypothetical B, the vocational expert opined that this individual could not perform any past jobs because they are "above light and beyond GED of 1st or 2nd level." Tr. 405. In addition, in response to hypothetical B, the

vocational expert testified that this individual could perform unskilled occupations with jobs that exist in the national economy, including: basket filler (SVP 1, 452,000 in the national economy), assembler (SVP 1, 1,555,000 jobs in the national economy), parking lot attendant (booth) (SVP 2, 113,490 jobs in the national economy), and cleaner/maid (SVP 2, 3,398,000 jobs in the national economy). Tr. 405.

Plaintiff argues the ALJ did not meet his burden at step five because he failed to reconcile several inconsistencies in the vocational expert testimony. ECF No. 11 at 14-18. "When there is an apparent conflict between the vocational expert's testimony and the DOT - for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle-the ALJ is required to reconcile the inconsistency ." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a determination. *Id*.

Here, the vocational expert testified at the hearing that if a person was only able to read at a second or third grade level, "[t]hat would be an SVP of 1." Tr. 110. Plaintiff contends this testimony is inconsistent with the vocational expert's response to vocational interrogatories that Plaintiff "could perform jobs as a parking lot attendant and cleaner/maid, both with an SVP of 2." ECF No. 11 at 17 (citing Tr. 405). The Court agrees. However, as noted by Defendant, even assuming the ALJ

erred in this reasoning, any error is harmless because "the ALJ identified two other SVP 1 jobs, both of which existed in significant numbers," basket filler (SVP 1, 452,000 in the national economy), and assembler (SVP 1, 1,555,000 jobs in the national economy). ECF No. 15 at 11; Tr. 29. It is well-settled in the Ninth Circuit that the number of basket filler and assembler jobs identified by the vocational expert qualify, respectively, is a significant number of jobs available in the national economy. Tr. 29; *see Gutierrez*, 740 F.3d at 529 (finding 25,000 jobs in the national economy was a significant number). Thus, the Court finds no harmful error in the ALJ's reliance on this portion of vocational expert's testimony. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

Plaintiff also noted that the vocational expert testified that the individual in hypothetical A would be unable to perform any unskilled work; then, in stark contrast, the vocational expert found the individual in hypothetical B, who had identical limitations as the individual in hypothetical A but with the added restriction to "frequent handling, grasping, and fingering with the right upper extremity," would be able to perform unskilled work as a basket filler, assembler, parking lot attendant, and cleaner. Tr. 29, 403-405. Plaintiff argues "[i]t defies logic that additional limitations would make a person able to perform more work, and raise[s] a serious question about the validity of the vocational expert testimony." ECF No. 11 at 17. Defendant asserts that this discrepancy "appears to be a clerical error," and

additionally argues that "the ALJ based his step five finding on the expert's response to Hypothetical B, not A, and thus this clerical error has no bearing on the ultimate finding that plaintiff could perform a significant number of jobs at step five in response to Hypothetical B." ECF No. 15 at 12 (citing Tr. 21, 29). The Court agrees.

Here, the assessed RFC contains identical limitations to those proposed by the ALJ in hypothetical B. Tr. 21, 404. Thus, even assuming, *arguendo*, that the ALJ erred in considering whether the individual in hypothetical A could perform unskilled work, this error is harmless because the ALJ properly relied on the vocational expert's testimony that an individual as described in hypothetical B could perform a significant number of jobs in the national economy. Tr. 29, 404; *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"). Moreover, Plaintiff fails to identify any unresolved inconsistency between the DOT and the vocational expert's testimony regarding hypothetical B. *See Zavalin*, 778 F.3d at 846 (the ALJ is required to reconcile any inconsistency between the DOT and vocational expert testimony). For all of these reasons, the Court finds no error in the ALJ's ultimate step five determination.

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to

an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. §

405(g).  As discussed in detail above, the ALJ provided clear and convincing

reasons to discount Plaintiff's symptom claims, properly weighed the medical

opinion evidence, and did not err at step five.  After review the court finds the ALJ's

decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

    2.  Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

    The District Court Clerk is directed to enter this Order and provide copies to

counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

    **DATED** March 12, 2020.


            *s/ Rosanna Malouf Peterson*
            ROSANNA MALOUF PETERSON
            United States District Judge